## Case No. 14,154.

### TREADWELL et al. v. BLADEN.

[4 Wash. C. C. 703; [1] 1 Robb, Pat. Cas. 531.]

Circuit Court, E. D. Pennsylvania.   Oct. Term, 1827.

WITNESS — COMPETENCY — INTEREST — PATENTS — NOVELTY—ABANDONMENT—MULTIPLICITY OF PATENTS—DISCLAIMER.

1. Action for the infringement of a patent right. To prove that the plaintiff was not the original inventor, the defendant gave in evidence a prior patent to A, for a machine alleged to have been the same in principle with the plaintiff's, and his assignment of the same to the defendant, and offered A as a witness to prove the priority of the invention. A is a competent witness, having no interest in the event of the suit.

2. If the defendant's notice of special matter states that the thing patented was known and used by A, B, C, and others, prior to the plaintiff's discovery, the defendant must prove its use by others than those named.

[Cited in Brooks v. Bicknell, Case No. 1,944.]

3. Proof by a witness that he had seen an article which might have been made by a machine similar to that for which the plaintiff afterwards obtained his patent, or in some other way, is not sufficient to deprive the plaintiff of his claim to be the original inventor; unless the jury should be satisfied from the evidence that the article was made by a machine similar to it in principle.

[Cited in Yearsley v. Brookfield, Case No. 18,-131.]

4. What constitutes the form, and what the principle of a machine?

[Cited in Smith v. Pearce, Case No. 13,089.]

5. It is the use, and not the intention, of an inventor to use an improvement. to be found in the plaintiff's machine, that can invalidate the plaintiff's patent under the sixth section of the patent act.

[Cited in Singer v. Walmsley, Case No. 12,900.]

6. To invalidate the plaintiff's patent, it is not sufficient to show that the thing patented was used prior to the plaintiff's application for his patent; but it should be shown that it was prior to his discovery.

[Cited in Whitney v. Emmett. Case No. 17,585.]

7. What amounts to an abandonment of his invention, by an inventor, so as to invalidate his patent.

8. A person cannot have two subsisting valid patents for the same thing at the same time. But if he has obtained a patent, which he afterwards finds to be too broad, by having included in it the discovery of another. he may obtain a second valid patent for such parts of the machine as were discovered by him, and not by another.

[Cited in Shaw v. Cooper, 7 Pet. (32 U. S.) 318.]

9. Quære, whether a disclaimer in the specification annexed to the grand patent of those parts, which were not the invention of the patentee, is sufficient to remove the objection to the patent?

[Cited in Whitney v. Emmett. Case No. 17,585.]

This was an action on the case for an infringement of a patent granted to Edward Treadwell on the 18th of May, 1826, for an improvement in the art of manufacturing biscuit and sugar bread. The schedule describes the whole instrument, viz. the cir-

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters. Jr., Esq.]

cular knives, dotters, cleavers, the holes and the niches for connecting the cakes and clearing away the loose dough, as in the former patent. But it disclaims the piercers or dotters, as used in the well known dotter used by hand, and declares that the patentee does not claim as his improvement either the circular knives, the dischargers, or clearers, or the use of the knives to cut, the piercers. to prick, nor the clearers to discharge the biscuit, these having been long known and occasionally used by many persons. "What he claims is, his improvement in this machine for saving labour are, the contrivance specified for attaching and keeping the biscuit in clusters, particularly the small cuts, niches, or places filed away for attaching the biscuits, and the holes for the passage of the dough through the plate, and the circular connexion of the cluster of seven knives in this new combination to save labour." On the 23d of May, 1826, Edward Treadwell, in consideration of $700, assigned to Elizabeth Watson the patent right, so far as the same applies to the city and county of Philadelphia, and all other towns and villages bordering on the river Delaware from Easton to Newcastle inclusive. The plaintiff gave evidence to prove that the defendant used a machine for making biscuit and sugar bread, with the improvement mentioned in the specification to Treadwell's patent, and claimed by him, and that the improvement was new and useful. He also gave some evidence of the value of the use of this improvement. The defendant having pleaded the general issue, gave notice of special matter of defence, that Edward Treadwell was not the original inventor; but that the improvement claimed by the plaintiff had been in use, prior to the application of Treadwell, by J. Siddons, Peter Christian, and Daniel Poole; and, generally, it had been used before the application of Treadwell. The defendant having given in evidence a patent to Daniel Poole for the machine used by the defendant, dated the 24th of December, 1824. and his assignment of the same for a valuable consideration to the defendant on the 25th of February, 1825, offered Poole as a witness to prove the priority of his invention. An objection to his competency was made, but overruled by the court.

Charles J. Ingersoll, for plaintiffs.
M'Ilvaine & Dallas, for defendant.

WASHINGTON, Circuit Justice. The witness can have no interest in the event of this suit, as the verdict could not be given in evidence should the plaintiffs obtain it, in any action which the defendant might bring against him, for the purchase money, or for damages. What interest he has, is in the question merely, and even that is remote. Whatever objection can be raised can go only to his credit. The witness was asked

generally, if he knew that this improvement had been in use by any person prior to the application of Treadwell? This was objected to by the plaintiff's counsel, the notice having designated three persons by name who had so used it.

WASHINGTON, Circuit Justice. This objection was taken in the case of Evans v. Eaton [Case No. 4,559], was overruled by this court; and that decision was approved by the supreme court on a writ of error [3 Wheat. (16 U. S.) 454]. The present objection must meet the same fate. Poole proved that his invention was made about the 1st of January, 1824. That he had seen gingerbread at Boston before the year 1819, connected together; but he knew not by what machine they were made, never having seen any, nor did he know that they were formed by a machine. Christian gave the same evidence as he did at the former trial. Siddons stated, that in July, 1820, he had a machine made with cutters, cleavers and dotters, holes and niches, but he never used it. That he got his first idea of the machine from Edward Treadwell, whose machine was then in operation. The plaintiff then gave evidence to prove that Edward Treadwell invented his machine prior to 1819, and that, in the latter part of that year it was made, and in use in this city. Some contradictory evidence was given as to the use of the plaintiff's improvement, and as to its difference from Christian's machine both in principle and in form.

The following objections were made by the defendant's counsel to the validity of the plaintiff's patent: 1. That the first patent of Treadwell, as well as the evidence in the cause, show that this improvement was known. and in use, before the application for the present patent. 2. That a party cannot have, at the same time, two valid patents for the same thing. The first patent is yet in existence, which invalidates the second. Morris v. Huntington [Case No. 9,831]; 2 Mass. 30. 3. That the alleged improvement of Treadwell upon Christian's invention is not in principle, but in form only; as Christian stated in his evidence that he had provided in his machine for the use of a wire which was to operate as a clearer of the loose cut dough; which, if it had been used, would have produced the same effect as the holes in Treadwell's machine. 4. Treadwell was not the first inventor of the improvement which he has patented. The plaintiff's counsel cited on the first point made by the defendant's counsel, Evans v. Weiss [Case No. 4,572]; Woodcock v. Parker [Id. 17,971]; Goodyear v. Mathews [Id. 5,576]; Morris v. Huntington [supra].

WASHINGTON, Circuit Justice (charging jury). The plaintiffs have laid before you a patent, for the improvements of which they

claim Edward Treadwell to be the original inventor, and have given evidence to prove the improvement to be useful, and that Treadwell was the original inventor of it. If they have succeeded in satisfying you of these facts, they are entitled to a verdict; unless the objections relied upon by the defendant's counsel, or some one of them, should be well founded. As to the fact of original inventions, it must depend upon the evidence, of which you are exclusively the judges. The only evidence relied upon by the defendant to disprove the claim of Treadwell to this discovery, is that given by Poole; who states. that, in the year 1819, he saw ginger cakes in clusters and connected together to the number of six or seven; but he admits that he had no knowledge how they were made, whether with a machine or by hand. The legal ground of this defence is that the improvement claimed and patented by Treadwell, was not originally discovered by him, but had been in use prior to the alleged discovery by him. This improvement, as you perceive by the machine before you, consists in what is termed in the specification, niches, or contrivances for attaching the biscuits in clusters, and the holes for the passage of the surplus dough through the plate. Now if the ginger cakes spoken of by the witness were made by hand, with a cup, or in a way different in principle from that stated in Treadwell's specification, it cannot be legally affirmed that the improvement claimed by the plaintiffs had been in use prior to the alleged discovery of Treadwell. It is for you to say, whether from the appearance of those ginger cakes, you can safely conclude that they were made by an instrument, having the improvement for which this patent was granted? As to the machines discovered by Christian, Poole, and Siddons, they most obviously do not interfere with the improvement of Treadwell. The contrivance to connect the biscuit, and the holes to vent the surplus dough are not in Christian's machine; and those made by Poole and Siddons were not earlier than 1824, about five years posterior to the discovery and use by Treadwell.

The next objection raised against the discovery of Treadwell is, that what he calls an improvement upon Christian's machine, is in form only, and not in principle. What constitutes form, and what principle, is often a nice question to decide; and upon none, are the witnesses who are examined in patent causes, even those who are skilled in the particular art, more apt to disagree. It seems to me that the safest guide to accuracy in making the distinction is. first to ascertain what is the result to be obtained by the discovery; and whatever is essential to that object, independent of the mere form and proportions of the thing used for the purpose, may generally, if not universally, be considered as the principles of the invention. What, for example, is the object of Treadwell's improvement upon Christian's machine? The answer is, to render the operation of that machine more expeditious in the making of biscuit, by uniting the cakes, so that seven of them may be removed from the place where they are, and with the same labour which would be required to remove a single one; and by enabling the operator, with greater facility, to extricate the machine from the loose dough. These results are produced by two contrivances not to be found in Christian's machine, and which constitute the principles of Treadwell's improvement. But it is contended that, as Christian contemplated using wires in his machine, the operation of which would be to clear away the loose dough, the holes in Treadwell's machine differ in form only from the wires before spoken of. The answer to this is, that the wires were never attached to Christian's machine, and were never used with it; and consequently, the objection has no foundation in the sixth section of the patent law.

It is in the third place objected to the validity of Treadwell's patent, that his improvement was known, and in use, prior to his application for a patent; it was used by Watson, and by the defendant for some years prior to May, 1826. If there be any solidity in this argument, the patent law would very nearly become a dead letter; as every inventor uses the machine he invents before he applies for a patent, with a view to satisfying himself whether it answers the purpose for which it was intended. But it is probable that the counsel did not intend to direct their objection to this kind of use; but to a general use of it, for some length of time, by the inventor, or by others.

In this view of the question, it is certainly not without difficulty, and it was felt by this court when the case of Evans v. Weiss [supra], was decided. The difficulty is created by the first section of the act of 1793 [1 Stat. 318]. which authorises the issuing of a patent to any citizen of the United States who shall allege himself to be the inventor of any new and useful art, machine, &c. not known or used before the application, &c. To construe those expressions, uninfluenced by other parts of the patent law, to mean the knowledge of, or use by the inventor himself, would, for the reason before mentioned, render the act a felo de se; and even to extend those expressions to the knowledge of a third person, surreptitiously obtained, and his consequent use of the invention, without the consent of the inventors, would be unreasonable and manifestly repugnant to the whole spirit and design of the patent system. But whatever difficulty may arise out of the first section of the act, it is, I think, cleared away by other parts of the act of 1793; particularly by that clause of the sixth section which authorises the defendant to give in

evidence, under the general issue, that the thing patented was not originally discovered by the patentee, but had been in use or described in some public work anterior to the supposed discovery of the patentee. Here we find the expression "supposed discovery" substituted for "application" in the first section, and the word "known," in that section, is altogether omitted in the sixth; and upon the whole, I take the true construction of the act to be, that to invalidate the patent, the thing patented must have been used prior to the alleged discovery, and that it is not sufficient to show that it was so prior to the application. That was the opinion of this court in the case of Evans v. Weiss [supra], and the same opinion has been held in Goodyear v. Mathews [Case No. 5,576]; Morris v. Huntington [Id. 9,831]; and by Mr. Justice Story, in Goodyear v. Mathews [Id. 5,576]. I admit that great public and private inconvenience may result from this construction, (although not so great as that which the other circumstances would produce,) where an inventor postpones unreasonably the exercise of his privilege of taking out a patent; thus keeping all the world at arm's length, so that no person can, in the mean time, safely construct, or use the thing invented, nor for fourteen years after the issuing of the patent, in case one should be taken out. But this is an inconvenience which it is competent for congress alone to remove. If, before the patent is taken out, the inventor looks on, and sees his invention going into general use without objection on his part; the courts will treat his conduct as equivalent to an abandonment or transfer of his exclusive right to the public. And it is possible that, without such use by others, an unreasonable and causeless, or faulty delay, in taking out his patent, might be justly and upon legal principles, considered as amounting to an abandonment; as to which, however, I avoid giving an opinion in this case, because it is unnecessary. For I hold it to be perfectly clear, that Treadwell is not chargeable with a causeless or faulty delay in securing the exclusive right to what he supposed to be his invention. He made the discovery some time in the year 1819, and during the latter part of that year, he put it into practical use, and on the 10th of January following, he obtained his patent, not only for the improvement secured by the last patent, but for those other parts of the machine of which he alleged, and so far as the evidence has gone to warrant a contrary conclusion, we are bound to say, he supposed himself to be the original inventor. The appearance of Christian's machine, which, from the place where it had for many years been reposing, was brought to the bar of this court upon a former trial between these parties, satisfied the patentee, as it did the court and jury on that occasion, that Treadwell was not the original inventor of the cutters, the

dotters, or the cleavers. This was the misfortune of the patentee, as well as of the plaintiff in that cause; but it surely would be very harsh to conclude that it was the fault of Treadwell to include in his patent the invention of another person, so as to invalidate a patent.

Lastly. It is objected that the existence of the patent of January, 1820, at the time the patent of May, 1826, was obtained, invalidated the latter.

I entirely concur in the decisions in the cases cited (Morris v. Huntington [supra], and 2 Mass. 30). The principle there decided is, that a person cannot have two subsisting valid patents at the same time, for the same invention. The question in this case then is, are the two patents to Treadwell for the same invention? I think most clearly that they are not. The first patent was for an improvement in the art of making crackers and sugar biscuit by the combined operation of a cutter, a cleaver, a dotter, and contrivances, (as they are called,) for connecting the cakes, and freeing the board from the loose dough. The second patent is for an improvement on Christian's machine by adding to it the contrivances for connecting the cakes or biscuit, and for relieving the board or machine from the loose dough.

But it is insisted that the first patent, which was for the combined operation of those five parts, was necessarily a patent for all and each of the parts, and consequently for those two for which the last patent was granted. This argument was urged in the case of Evans v. Eaton [Case No. 4,560], and was rejected by this court, and that refutation was approved by the supreme court on a writ of error, so far as it was rested on the general patent law. The difference between that case and this is, that there the court was confined to a private act for the relief of O. Evans, and upon that point, I freely acknowledge that this court was mistaken. These two patents can no more be said to be for the same invention, than the patent to O. Evans for the combined operation of the five instruments for which his patent was issued, and a patent for the hopper boy, had one been granted, could be said to be for the same invention, had the private act been out of the question. But even if these patents were substantially for the same invention, I should strongly incline to the opinion (without meaning, however, to give a positive decision on the point), that the disclaimer of all title under the first patent to the three material parts of the invention for which it was granted, would operate as an estoppel to any remedy which might be prosecuted for a violation of that patent; and if all remedy for a breach of that patent be defeated, can any right under it remain?

If, upon the whole, the jury be satisfied that the defendant has used the improvement for which the plaintiff has a patent,

between the date of the patent and the institution of this suit; that the improvement is useful, and that Treadwell was the original inventor of it, the plaintiffs are entitled to a verdict. · The amount of the damages is for the jury to assess. Verdict for $25 damages.

[For another case involving this patent, see Case No. 17,277.]